[No. G010167. Fourth Dist., Div. Three. Feb. 24, 1992.]

PORTOLA HILLS COMMUNITY ASSOCIATION, Plaintiff and
Appellant, v.
JOHN W. JAMES, Defendant and Respondent.

**COUNSEL**

James F. McGee and Donald M. Barker for Plaintiff and Appellant.

Sandra J. Brower and Susan J. Boyle for Defendant and Respondent.

Daniel C. Rooney and Lauritz S. Helland as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**CROSBY, Acting P. J.**—Is a private restriction prohibiting a homeowner from installing a satellite dish in his yard unreasonable? In this case it is. Also, because the appeal from the judgment is frivolous, sanctions shall be assessed.

I

The parties stipulated to the following facts:[1] Defendant John James is the owner of a lot in the planned community of Portola Hills. The Portola Hills Community Association enforces a comprehensive set of covenants, conditions and restrictions (CC&Rs). The CC&Rs "*completely ban*[ ]" the use of satellite dishes in Portola Hills. [¶] 5. Separate architectural guidelines prepared by the Portola Hills Community Association and adopted by the Board of Directors state in pertinent part as follows: [¶] '13. Satellite Dish: *Absolutely no satellite dish of any nature will be acceptable on the exterior of the units* or lots anywhere within the Association. Cable television has been provided for this purpose.' " (Italics added.)

Despite the ban, James asked the association's architectural control committee to approve a landscaping plan that included a backyard satellite dish. The "landscape plans were approved by the [a]rchitectural [c]ontrol [c]ommittee with the exception of the installation of the satellite dish." James installed the dish anyway. The association sued for a permanent injunction, damages, and attorney fees. James cross-complained for attorney fees.

The trial was a fairly abbreviated affair. The court accepted the stipulated facts, and both sides submitted trial briefs. Photographs, the CC&Rs, association bylaws, architectural guidelines, and various correspondence between the parties were received in evidence. When asked, "Is there

---

[1]Because several of the stipulated facts are critical to our conclusion that sanctions must be assessed, they are reproduced verbatim.

anything any side wishes to present factually?", the association's counsel offered the following: "Your Honor, a brief comment [ ]. Despite the fact that the dish is not visible from the street and despite the fact that perhaps planting trees taller than ten feet down the side property line would camouflage it even more, it's an undisputed fact that [James's] request for permission to install the dish was denied by the board or by the architectural control committee. [¶] Yet [James] went ahead and installed that dish anyway[,] thereafter raising the First and Fourteenth Amendment arguments. I would submit to the court that this whole lawsuit could have been avoided had the defendant when his request was denied filed an action requesting a judicial interpretation of the particular restriction in the [CC&Rs]." James's counsel presented a closing argument; the association's lawyer did not.

The court acknowledged the "presumption that the[ ] bylaws are valid, but concluded the ban against exterior satellite dishes was unreasonable.[2] James was awarded costs, including more than $14,000 in attorney fees.

II

Civil Code section 1354 provides, "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, *unless unreasonable*,

---

[2]"I agree with [the association] that [satellite dishes] can be regulated subject to zoning, but in a reasonable manner. In balancing the intent of the community here or that of the homeowner's association as a whole against that of the [defendant], I don't think it's reasonable to put a total ban on [satellite dishes]. [¶] Restrictions that would assure that it had been done in an aesthetically acceptable manner would certainly be appropriate. The facts of this case are very simple. You [have] a two story house, and you have a satellite [dish] sandwiched between the defendant's two story house and a rather high slope in the back. [¶] The [dish], ten feet h[igh], is anchored to the ground level, the first floor or very close to it. You have fences, side fences of 6 feet or so, substantial shrubbery and [an] offer by the defendants to install additional shrubbery. [¶] From the photographs submitted, the [dish is] not observable from adjoining property. And that includes property up the slope to the back of the house because [it is] concealed by other shrubbery there. It's [also] the clear enunciated policy of the federal government to foster the use of [satellite dishes]. [¶] I don't think it can be said that providing cable is a sufficient alternative, because satellites as we know it, and I think [I] can almost take judicial notice of it, offers the potential for viewing worldwide events, worldwide and communicated worldwide, and I don't believe—well, cable I suppose has that capacity but they certainly haven't fulfilled it, so anyway, in a nutshell I'm going to rule for defendant[ ]. [¶] I think they have a right to install a satellite dish subject to reasonable restrictions by the homeowners and I think some additional landscaping might be accomplished here to make it even less observable, but I think they've substantially complied with it. [¶] They have given a lot of thought to what they installed. In viewing these photographs, the ones you'd have to be concerned with are the neighbors immediately to either side of them or above them and from the evidence submitted they are not complaining. [¶] I don't see how it could affect somebody down the street or down the block. I appreciate the Association's view that they have the total ban restriction. There's a presumption that their by-laws are valid and they did what they could I suppose to enforce it. [¶] I don't think that [ ] James [is] to be penalized for what [he] view[s] to be a constitutional right, particularly when [he] prevail[s]."

and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both." (Italics added.) ■ Restrictions are presumed valid, as the trial judge recognized. (See 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 314, p. 516; Sproul & Rosenberry, Advising Cal. Condominium & Homeowners Associations (Cont.Ed.Bar 1991) Enforcement of Restrictions, § 7.34, p. 344.) However, "[w]hether an amendment is reasonable depends on the circumstances of the particular case." (*Ritchey* v. *Villa Nueva Condominium Assn.* (1978) 81 Cal.App.3d 688, 694 [146 Cal.Rptr. 695, 100 A.L.R.3d 231].) A homeowner is allowed to prove a particular restriction is unreasonable as applied to his property.[3]

The question of reasonableness is one of law, and we review it de novo in light of the trial court's factual findings.[4] (*City of Oceanside* v. *McKenna* (1989) 215 Cal.App.3d 1420, 1424 [264 Cal.Rptr. 275] [restriction requiring owner occupancy]; Sproul & Rosenberry, Advising Cal. Condominium & Homeowners Associations, *supra*, Commonly Encountered Restrictions, § 8.28, p. 381.) ■ Applying this standard, we reach the same conclusion as the trial judge. He made a finding, supported by ample evidence and not challenged on appeal, that James's dish is not visible to other residents or the public. With that established, the question becomes whether the ban against a satellite dish that cannot be seen promotes any legitimate goal of the association. It clearly does not. Accordingly, the restriction is unreasonable as a matter of law. This conclusion moots James's other arguments.[5]

As an aside, we note the association's only legitimate concern is with "exterior" structures. Those are defined in the CC&R's as structures "which

---

[3]The analysis is unaffected by Civil Code section 711. A deed restriction prohibiting satellite dishes is not a disfavored restriction on the *alienation* of property. James is free to sell or lease his property, subject to reasonable restrictions. He is constrained in his *use* of the property, but use restrictions are a primary attribute (and a major selling point) of a planned community. The Legislature has expressed its intention to favor such restrictions, "unless unreasonable."

[4]Accordingly, the association's failure to request a statement of decision is of no moment on that point. (Cf. *Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22]; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130 [275 Cal.Rptr. 797, 800 P.2d 1227].)

[5]We need not decide whether this particular *private* restriction is unconstitutional or violates federal law. (See *Weaver* v. *Jordan* (1966) 64 Cal.2d 235, 242 [49 Cal.Rptr. 537, 411 P.2d 289]; *Hunter* v. *City of Whittier* (1989) 209 Cal.App.3d 588, 591 [257 Cal.Rptr. 559]; 47 U.S.C. § 605(b); 47 C.F.R. § 25.104; Report of the Federal Communications Commission, In re Matter of Preemption of Local Zoning or Other Regulation of Receive-only Satellite Earth Stations, CC Docket No. 85-87; cf. *Laguna Royale Owners Assn.* v. *Darger* (1981) 119 Cal.App.3d 670, 683 [174 Cal.Rptr. 136] ["considerable doubt [] whether the actions of [a homeowner's association] constitute state action so as to bring into play [] constitutional guarantees"].)

[are] visible to others in the [p]roject and/or to the public." (CC&R's, art. IX, § 2.) A dish that cannot be seen by anyone else would not even appear to qualify as an exterior structure under the association's own rules.

### III

██ James has requested sanctions for a frivolous appeal, and we agree no reasonable attorney could believe this appeal had any merit. The only conclusion is that it was taken solely to harass defendant or delay judgment. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].)

The association's appeal hinges on two contentions, both of which are frivolous. In the first, the association attempts to raise an issue not litigated below, asking for a reversal on the trial judge's failure to consider a variance purportedly granted by the association which authorized James's installation of the dish in his attic.[6] The subject of a variance was not included in the stipulated facts or plaintiff's trial brief and was not presented orally during the evidentiary phase or argued to the court.[7]

We cannot ignore plaintiff's obvious and glaring omission in this regard. Any error by the court in failing to address the variance issue (and we do not concede *that* point) was certainly invited. In any event, the failure to request a statement of decision absolutely forecloses any consideration of it now. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d 1130.)

Even more egregious is plaintiff's next contention. It has the audacity to complain the trial judge "determined that Section 19, Article 8 of Portola Hills By-Laws was unreasonable because of his mistaken belief that this section provides for a total ban on satellite dishes." *Mistaken belief?* The stipulated facts described the ban as "complete[]" and "absolute[]." The association's trial brief explained dishes were "prohibited" and "totally ban[ned]" by the CC&Rs. The mistake here was solely plaintiff's.

And it will prove costly. Bluntly speaking, the judicial system does not have the resources to indulge petulant litigants. The association served up stipulated facts and gambled on a legal position. It lost. Then, without a legal or logical foundation, it contrived to revive the fatally wounded action. But more than distaste for the verdict is necessary to justify the consumption of

---

[6]Despite counsel's insistence to the contrary at oral argument, it is common knowledge that a satellite dish ensconced in an attic is worthless unless the roof is removed.

[7]The purported variance is mentioned in passing in one trial exhibit, a letter between counsel. At trial, plaintiff's counsel unequivocally declared that James's request to install a satellite dish was denied. His statement is quoted, *ante*, on page 292.

scarce and overburdened judicial resources. Plaintiff overstepped the bounds of propriety here, and sanctions are warranted.

The judgment is affirmed. Plaintiff and its appellate counsel are jointly and severally liable to respondents in the amount of $3,000, assessed as sanctions for a frivolous appeal. Respondents are also entitled to costs and reasonable attorney fees on appeal to be determined by the superior court upon return of the remittitur.

Wallin, J., and Sonenshine, J., concurred.