TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 92-213 |
| of | : | |
| | : | OCTOBER 6, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE NOLAN FRIZZELLE, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May the homeowners' association of a common interest development prohibit children from using of one of its two swimming pools?

CONCLUSION

The homeowners' association of a common interest development may prohibit children from using one of its two swimming pools if the restriction is reasonable under the particular circumstances and does not create an inequity for families with children under 18 years of age.

ANALYSIS

We are informed that a common interest development of 500 homes has one swimming pool designated for adults only and one swimming pool designated for adults and children. The adult pool is used primarily as a lap pool, while the family pool has a wading section, a diving board, and a grassy play area surrounding it.

The question presented for analysis is whether the homeowners' association of a common interest development may maintain the above described type of arrangement, which in effect prohibits the use of one of its two pools by children living within the development. We conclude that the prohibition would be lawful if it is reasonable under the particular circumstances and does not create an inequity for families with children under 18 years of age.

Resolution of the issues raised by the question requires consideration of three different statutory enactments. The first is the Davis-Stirling Common Interest Development Act.

(Civ. Code, §§ 1350-1372; hereafter "Davis-Stirling Act").[1]   Under this legislation, a "common interest development" is defined as a community apartment project, a condominium project, a planned development, or a stock cooperative. (§ 1351, subd. (c).)  Most of these developments utilize homeowners' associations.[2]

Section 1353 provides for the recording of a "declaration" which, inter alia, "set[s] forth the name of the [homeowners'] association and the restrictions on the use or enjoyment of any portion of the common interest development that are intended to be enforceable equitable servitudes."  It is further provided in section 1354 that:

> "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development.  Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both.  In any action to enforce the declaration, the prevailing party shall be awarded reasonable attorney's fees and costs."

Thus, a homeowners' association may create "reasonable" restrictions on the use of its common areas.[3]   As stated in *Bernardo Villas Management Corp.* v. *Black* (1987) 190 Cal.App.3d 153, 154: "A condominium project may impose covenants and restrictions on the use or enjoyment of any portion of the common interest area. (Civ. Code, § 1353.)  These covenants and restrictions become equitable servitudes unless unreasonable."

The reasonableness of a particular restriction depends upon the individual circumstances in each case. (*Ritchey* v. *Villa Nueva Condominium Assn.* (1978) 81 Cal.App.3d 688, 694.)  In *Bernardo Villas Management Corp. v. Black, supra*, 190 Cal.App.3d 153, for example, the restriction banned all trucks, campers, boats, and recreational vehicles from the common area of a condominium project.  The restriction, as applied to a new pickup truck used for personal transportation, was overturned by the court as being unreasonable since the parking of the truck in the condominium project carport was not aesthetically "unpleasant" to reasonable persons and did not interfere with the other owners' use and enjoyment of their property.  (*Id.* at pp. 154-155.)

In *Portola Hills Community Assn.* v. *James* (1992) 4 Cal.App.4th 289, the association restriction banned the use of a satellite dish anywhere within the planned community, regardless of the visibility of the satellite dish to other residents or to the public.  The court held that the restriction was unreasonable because it did not promote any legitimate goal of the association. (*Id.* at p. 293.)

A standard of reasonableness also governs the application of a second statutory scheme, the Unruh Civil Rights Act (§ 51; hereafter "Unruh Act"), relevant to the question presented.  Section 51 prohibits discrimination in "accommodations, advantages, facilities,

---

1.    All references hereafter to the Civil Code are by section number only.

2.     As used in the Davis-Stirling Act, an "association" is "a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development." (§ 1351, subd. (a).)

3.    "Common area" generally means the entire common interest development property except for the separate individual interests. (§ 1351, subd. (b).)

privileges, or services in all business establishments. . . ."[4/]  The Court of Appeal recently held that the "Unruh Civil Rights Act prohibits only unreasonable, arbitrary or invidious discrimination, not differential treatment based on actual characteristic differences or differences in need of users." (*Sunrise Country Club* v. *Proud* (1987) 190 Cal.App.3d 377, 381.)[5/]

In the *Sunrise Country Club* case, the validity of certain association rules, including a prohibition against the use of certain swimming pools by children under the age of 16, was challenged.  Children of residents were entitled to use 11 of the 21 pools in the development.  The court found that it was not unreasonable or arbitrary to set aside the other 10 pools for use by adults only, particularly where there was evidence that the restriction served to promote the health and safety of the children in the development and that the adult portions of the development were largely populated by retired or semiretired adults.  Pointing out the numerous statutes in California which provide for differential treatment of adults and children, the court held that the swimming pool restriction did not constitute an unreasonable or arbitrary age discrimination.

The third statutory scheme requiring analysis is the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (42 U.S.C. §§ 3600-3620; hereafter "Fair Housing Act").  Under this federal legislation it is unlawful: "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  (42 U.S.C. § 3604(b).)  "Familial status" is defined for purposes of the Fair Housing Act as follows:

"`Familial status' means one or more individuals (who have not attained the age of 18 years) being domiciled with--

"(1)  a parent or another person having legal custody of such individual or individuals; or

"(2)  the designee of such parent or other person having such custody, with the written permission of such parent or other person.

"The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years."  (42 U.S.C. § 3604(k).)[6/]

---

4.  A homeowners' association is a business establishment within the meaning of the Unruh Act.  (*O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790, 795-796.)

5.  In *Marina Point, Ltd v. Wolfson* (1982) 30 Cal.3d 721, the Supreme Court held that the banning of children from an apartment house offering rental units was a type of arbitrary discrimination prohibited by the Unruh Act.  The court, however, did not purport to bar all age-limited admission policies in housing.  It recognized that persons upon retirement or after a certain age may seek a residential environment that does not include children.  (See 65 Ops.Cal.Atty.Gen. 559, 561 (1982).)

6.  Pursuant to 24 Code of Federal Regulations section 100.65(b)(4), prohibited actions include "limiting the use of privileges, services or facilities associated with a dwelling because of . . . familial status. . . ."

The prohibitions against familial status discrimination, however, do not apply to "housing for older persons" as defined in the federal legislation. (42 U.S.C. § 3607(b).)

In *Glover* v. *Crestwood Lake Section 1 Holding Corps.* (S.D.N.Y. 1990) 746 F.Supp. 301, 310, the court held that the policy of an apartment complex barring a single parent with one child from occupying a one-bedroom apartment while allowing two adults to share a one-bedroom apartment constituted "discrimination on the basis of familial status" under the Fair Housing Act.

In *Seniors Civil Liberties Association, Inc.* v. *Kemp* (M.D.Fl. 1991) 761 F.Supp. 1528, the court examined in detail the legislative history of the 1988 amendments to the Fair Housing Act. It noted a congressional report that "the purpose of the `familial status' portions of the Act was to deal with an increasing difficulty that people with children are having in finding housing." It found that Congress had heard testimony regarding discrimination occurring in condominiums--that condominiums traditionally have catered to the elderly or to the young by having age-restrictive rules or covenants; consequently, families with children have been greatly excluded from this segment of the housing market. (*Id.* at pp. 1540-1542.)

In view of the foregoing legislative history of the Fair Housing Act, we believe that a homeowners' association may place restrictions on the use of its swimming pools by children unless such practice is one which, by creating an inequity for families with children under 18 years of age, tends to exclude such families from the development. Again, the particular circumstances must be examined in each case.

In answer to the question presented, we conclude that the homeowners' association of a common interest development may prohibit children from using one of its two swimming pools if the restriction is reasonable under the particular circumstances and does not create an inequity for families with children under 18 years of age.

* * * * *