634 So.2d 273 (1994)
Peter KORANDOVITCH and Mary M. Korandovitch, his wife, Appellants,
v.
VISTA PLANTATION CONDOMINIUM ASSOCIATION, INC., a Florida Non-Profit Corporation, Appellee.
No. 93-0582.
District Court of Appeal of Florida, Fourth District.
March 30, 1994.
*274 Robert J. Compton of Compton & Associates, P.A., Ft. Pierce, for appellants.
Charles W. McKinnon of McKinnon, Stewart, Nall & McKinnon Chartered, Vero Beach, for appellee.
KLEIN, Judge.
Appellant condominium owners appeal a permanent injunction ordering them to remove address numbers they had affixed to the outside of their condominium without getting association approval. We conclude that it was inappropriate for the trial court to resolve this in favor of the association by summary judgment and reverse.
Vista Plantation is a condominium in which the apartments' front doors are on the exterior of the building, and there is an apartment number on each front door. In 1990 the association approved four unit owners' replacing their screen doors with storm doors which contain dark tinted glass. When these doors were installed the numbers on the front doors, which had been visible through the screen, were not visible through the tinted glass.
The appellant owners requested permission to install address numbers next to their front door, but were advised that the board would not approve this. The owners then installed the numbers on the building, and the association brought this action for an injunction based on a section of the declaration of condominium which provides that
... Unit owners will not paint or otherwise decorate or change the appearance of any portion of the exterior of any apartment building, including any attachments thereto, without the prior written approval of the board of the directors of the association.
The owners defended on the ground that the association was estopped because it had approved the storm doors which obliterated the address numbers. The owners also asserted that the prohibition endangered their health and safety because their apartment number would not be apparent to someone coming to render emergency services.
The trial court granted the association, by summary judgment, a permanent injunction requiring removal of the numbers.
In Hidden Harbor Estates v. Basso, 393 So.2d 637, 639-640 (Fla. 4th DCA 1981), the owners of a condominium mobile home drilled a well on their property after the condominium board denied their request to do so. The association sought an injunction, which the trial court denied, and in affirming this court decided that these cases fall into two categories:
The first category is that dealing with the validity of restrictions found in the declaration of condominium itself.
* * * * * *

*275 In the first category, the restrictions are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed. Such restrictions are very much in the nature of covenants running with the land and they will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right.
* * * * * *
The rule to be applied in the second category of cases, however, is different. In those cases where a use restriction is not mandated by the declaration of condominium per se, but is instead created by the board of directors of the condominium association, the rule of reasonableness comes into vogue. The requirement of "reasonableness" in these instances is designed to somewhat fetter the discretion of the board of directors. By imposing such a standard, the board is required to enact rules and make decisions that are reasonably related to the promotion of the health, happiness and peace of mind of the unit owners.
In Basso the condominium declaration contained a provision requiring approval for any changes in the exterior of a mobile home or improvements or alterations to a lot, but contained no specific provision regarding the drilling of wells. This court concluded that the owners' request to drill a well was thus within the second category of cases, and the matter was therefore discretionary with the association.
In the present case, although the declaration of condominium contained the general provision similar to the provision in Basso that unit owners would not change the exterior without association approval, there were no specific provisions regarding the placing of apartment numbers on the exterior. We therefore conclude that this case is similar to Basso and thus falls in the second category of cases, in which the association has discretion. Prior to Basso, this court described that discretion in Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180, 182 (Fla. 4th DCA 1975):
Certainly, the association is not at liberty to adopt arbitrary or capricious rules bearing no relationship to the health, happiness and enjoyment of life of the various unit owners. On the contrary, we believe the test is reasonableness. If a rule is reasonable the association can adopt it; if not, it cannot. It is not necessary that conduct be so offensive as to constitute a nuisance in order to justify a regulation thereof. Of course, this means that each case must be considered upon the peculiar facts and circumstances thereto appertaining.
We recognize that in condominiums "each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property," Norman. We also recognize the importance of the association being able to control the appearance of the exterior of the building. The photographs of the owners' apartment and address numbers, however, cause us to wonder whether this association, in its zeal for uniformity, may be being overly conscientious. The owners' arguments regarding estoppel and the necessity of having their apartment number visible do appear to have some merit. The only issue before us at the present time, however, is the propriety of the summary judgment, which we hereby reverse.
DELL, C.J., and ANSTEAD, J., concur.